Unpublished Decisions

Exhibit A

525 Fed.Appx. 458
This case was not selected for publication in the Federal Reporter.
Not for Publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Seventh Circuit Rule 32.1. (Find CTA7 Rule 32.1)
United States Court of Appeals, Seventh Circuit.

Eric ONYANGO, Plaintiff–Appellant,
v.
DOWNTOWN ENTERTAINMENT, LLC, Defendant–Appellee.

Nos. 12–3752, 13–1083.
|
Submitted May 9, 2013.*

* After examining the briefs and the record, we have concluded that oral argument is unnecessary. The appeals are thus submitted on the briefs and the record. *See* FED. R.APP. P. 34(a)(2)(C).

|
Decided May 10, 2013.

**Synopsis**
**Background:** Black patron brought action against club owner under § 1981 alleging racial discrimination. The United States District Court for the Northern District of Illinois, Sharon J. Coleman, J., 2012 WL 3133565, struck count seeking injunctive relief and denied patron's request for leave to file another amended complaint adding claims of retaliation and fraud. Patron filed interlocutory appeals.

**[Holding:]** The Court of Appeals held that nonfinal order denying black patron's request for injunctive relief against club owner to prevent club from excluding him from its places of public accommodation without lawful justification and from appeasing non-black patrons at the expense of violating contractual and civil rights of black patrons was not appealable.

Appeals dismissed.

**West Headnotes (2)**

[1]  **Federal Courts**
  ⟾ Injunction

Nonfinal order denying black patron's request for injunctive relief against club owner to prevent club from excluding him from its places of public accommodation without lawful justification and from appeasing non-black patrons at the expense of violating contractual and civil rights of black patrons was not appealable; language in minute order did not end patron's request for permanent injunctive relief but simply stated that complaint lacked sufficient detail for judge to know whether patron had a substantial likelihood of prevailing on the merits of his claim. 28 U.S.C.A. § 1292(a)(1); 42 U.S.C.A. § 1981.

Cases that cite this headnote

[2]  **Federal Courts**
  ⟾ Pleading

District court order refusing to permit plaintiff in civil rights action to amend his complaint for a sixth time was interlocutory and nonappealable.

Cases that cite this headnote

*459 Appeals from the United States District Court for the Northern District of Illinois, Eastern Division. No. 11 C 844, Sharon J. Coleman, Judge.

**Attorneys and Law Firms**

Eric Onyango, Chicago, IL, pro se.

Daniel P. Costello, Chicago, IL, for Defendant–Appellee.

Before JOEL M. FLAUM, Circuit Judge, DIANE S. SYKES, Circuit Judge and JOHN DANIEL TINDER, Circuit Judge.

## ORDER

**1 We have consolidated two interlocutory appeals filed by Eric Onyango in his lawsuit against Downtown Entertainment. We dismiss both appeals for lack of subject-matter jurisdiction.

Onyango paid $20 to enter a Chicago nightclub owned by Downtown Entertainment. Inside the club he encountered Maciej Lampe (a Pole who plays professional basketball in Spain). Onyango (who is black) alleges that Lampe shoved him and hurled a racial epithet after asking Onyango to sell him drugs and being turned away. Security personnel then forcibly removed Onyango, but not Lampe. Onyango has sued Downtown Entertainment under 42 U.S.C. § 1981 claiming racial discrimination. His complaint also includes supplemental state-law claims for breach of contract, assault, and negligence. Onyango says that he suffered physical and emotional injuries, and also has lost business opportunities because he no longer can network at Downtown Entertainment's clubs.

[1] Onyango has amended his complaint five times. The current iteration includes a "Count Six" entitled "Plaintiff's Basis for Injunctory Relief." This is not a separate *claim* but rather an assertion that "[r]emedies available at law, such as monetary damages, are inadequate to compensate Plaintiff's injuries." Onyango thus demands in his "Prayer for Relief," not only damages, but also that Downtown Entertainment "be permanently enjoined" from excluding him from "its places of public accommodation without lawful justification," and from "appeasing non-black patrons at the expense of violating contractual *460 and civil rights of black patrons." The district court entered a minute order striking "Count Six" on the ground that Onyango did not "plead facts sufficient for the Court to conclude that there is a substantial likelihood that future violations will occur." Onyango filed a notice of appeal from this minute order, which we have docketed as case No. 12-3752. He then asked the district court for leave to filed another amended complaint adding claims of retaliation and fraud. When the court denied that request, Onyango filed a second notice of appeal, which we have docketed as case No. 13-1083.

An order denying injunctive relief may be appealable even when the litigation in the district court is still ongoing. *See* 28 U.S.C. § 1292(a)(1). But as a ground for taking an interlocutory appeal, the denial of injunctive relief provides only a narrow exception to the general rule barring appeals from nonfinal decisions. *Albert v. Trans Union Corp.*, 346 F.3d 734, 737 (7th Cir.2003); *Simon Prop. Grp., L.P. v. mySIMON, Inc.*, 282 F.3d 986, 990 (7th Cir.2002). Only if the district court's decision is definitive, i.e., the plaintiff will have no further chance of obtaining the desired injunction from the district court, does this court have jurisdiction over an interlocutory appeal. *Albert*, 346 F.3d at 739; *Simon Prop. Grp.*, 282 F.3d at 990–91; *Parks v. Pavkovic*, 753 F.2d 1397, 1402–03 (7th Cir.1985). (It should be noted that Onyango did not file a timely appeal of the denial of his motion for a *preliminary* injunction—No. 12-3752 involves only the minute order addressing "Count Six.")

**2 The language in the minute order entered by the district court does not end Onyango's quest for *permanent* injunctive relief. It simply says that Onyango's complaint lacks sufficient detail for the judge to know whether he has a substantial likelihood of prevailing on the merits. The minute order should be understood as striking the injunctive "count" as a separate, free-standing claim. But Onyango might still get his injunction: An injunction is a type of remedy, *Sherwood v. Marquette Transp. Co.*, 587 F.3d 841, 845 (7th Cir.2009); Dan B. Dobbs, *Law of Remedies* 223 (2d ed.1993), as distinct from an underlying claim for relief, *see Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 595, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983); *LaSalle Nat'l Bank v. Metro. Life Ins. Co.*, 18 F.3d 1371, 1376 (7th Cir.1994); *Black's Law Dictionary* 251 (9th ed.2009) (defining "cause of action," or "claim," as "a factual situation that entitles one person to obtain a remedy in court"). Onyango should not have characterized his request for injunctive relief as a separate count of his complaint, and the district court's order striking the injunctive "count" thwarts him only from obtaining an injunction without succeeding on his underlying § 1981 or supplemental claims—an impossible feat in any event. Injunctive relief remains available to him later in the litigation, that is, if he prevails on his remaining substantive claims. *See CustomGuide v. CareerBuilder, LLC*, 813 F.Supp.2d 990, 1002 (N.D.Ill.2011).

[2] We thus lack subject-matter jurisdiction over case No. 12-3752. We also lack jurisdiction over case No. 13-1083,

Case 2:17-cv-00688-NJ Filed 08/14/17 Page 3 of 11 Document 13-3

since the district court's order refusing to permit Onyango to amend his complaint for a sixth time is interlocutory and fits no exception to the rule against appeals from nonfinal decisions. *See Gen. Ins. Co. of Am. v. Clark Mall Corp.,* 644 F.3d 375, 379–80 (7th Cir.2011); *Kerr–McGee Chem. Corp. v. Lefton Iron & Metal Co.,* 570 F.3d 856, 857–58 (7th Cir.2009).

Accordingly, both appeals are DISMISSED.

**All Citations**

525 Fed.Appx. 458, 2013 WL 1925692

---

**End of Document**  © 2017 Thomson Reuters. No claim to original U.S. Government Works.

1987 WL 5406
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Peter NICHOLSON, Plaintiff,
v.
CONRAIL, Defendant.

No. 86 C 5551.
|
Jan. 14, 1987.

MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

*1 Plaintiff Peter Nicholson brings this action against defendant "Conrail," presumably the Consolidated Rail Corporation, seeking relief for alleged discrimination under (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., (2) the thirteenth amendment to the United States Constitution, (3) the fourteenth amendment, (4) 42 U.S.C. § 1981, (5) 42 U.S.C. § 1983, (6) 42 U.S.C. § 1985, and (7) 42 U.S.C. § 1988. Plaintiff, who is black, alleges that he was employed by defendant as a police officer and was fired by defendant on January 19, 1985, because he is black. The complaint also alleges that defendant failed to make plaintiff "a permanent employee" because of his race, suggesting that he was employed as a temporary or probationary employee until he was fired.

Defendant now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, raising various issues in support of its motion, and asks for sanctions pursuant to Rule 11. Plaintiff's response fails to address any of the legal issues raised by defendant other than to suggest that he will cure all defects in the complaint by amendment.

Defendant raises one issue addressed to all bases for relief. It contends that plaintiff waived any right he had to contest his dismissal by signing an agreement not to sue as a condition of employment. However, even if such a "waiver" were properly before the court,[1] it would be in violation of public policy and therefore unenforceable. Foreman v. Holsman, 10 Ill.App.3d 551, 141 N.E.2d 31, 32 (1957) ("the benefits of a statute may not be waived by an individual in cases where the statute was enacted for the protection of the public generally."); Chubb v. Amax Coal Co., 125 Ill.App.3d 682, 80 Ill.Dec. 917, 921, 466, N.E.2d 369, 373 (5th Dist. 1984) ("a release covering all claims that might later arise between the parties 'would constitute a consent to the foregoing of legal protection for the future and would plainly be against public policy.' "). Therefore such a "waiver" does not preclude this action.

However, plaintiff's complaint fails for other reasons:

(1) Plaintiff's claim is dismissed to the extent that it is based on the thirteenth amendment because no independent cause of action exists under the thirteenth amendment. E.g., Westray v. Porthold, Inc., 586 F.Supp. 834, 838–39 (D.Md.1984); Clark v. Universal Builders, Inc., 409 F.Supp. 1274, 1279 (N.D.Ill.1976).

(2) Plaintiff's claim is dismissed as to the fourteenth amendment for failure to satisfy the requirement of "state action." Although plaintiff alleges that defendant acted "under color of law," he provides no factual allegations to support that conclusory allegation. Plaintiff alleges that defendant is "regulated by the U.S. Federal Government," but the restrictions of the fourteenth amendment do not apply to the federal government. Bolling v. Sharpe, 374 U.S. 497, 499 (1954); Simpson v. United States, 342 F.2d 643, 643 n. 1 (7th Cir.1965).[2]

*2 (3) Plaintiff's claim is dismissed as to 42 U.S.C. § 1983 for failure to satisfy the requirement of "state action." Edgar v. Inland Steel Co., 744 F.2d 1276, 1278 (7th Cir. 1984).

(4) Plaintiff's claim is dismissed as to 42 U.S.C. § 1985 for failure to allege any material facts to support a claim of conspiracy. Jafree v. Barber, 689 F.2d 640, 644 (7th Cir. 1982).

(5) Plaintiff's claim is dismissed as to Title VII for failure to allege that plaintiff was qualified for the position in question. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Germane v. Heckler, 804 F.2d 366, 368 (7th Cir. 1986).

(6) Plaintiff's claim is dismissed as to 42 U.S.C. § 1981 for failure to allege that plaintiff was qualified for the position in question. Flowers v. Crouch-Walker Corp., 552 F.2d 1277, 1281 n.3 (7th Cir. 1977) (applying McDonnell Douglas analysis to § 1981 claims for disparate treatment); Bailey v. Binyon, 583 F. Supp. 923 (N.D. Ill. 1984) (same).

(7) 42 U.S.C. § 1988 does not create an independent cause of action and instead deals with the procedure to be followed in civil rights actions brought under other statutory provisions. Moor v. Count of Alameda, 411 U.S. 693, 702 (1973); Amos v. Lane, 605 F. Supp. 775, 777 (N.D. Ill. 1985).

IT IS THEREFORE ORDERED that defendant's motion to dismiss is granted and the complaint is dismissed. Defendant's motion for sanctions is denied. If plaintiff believes that any of these defects can be remedied (presumably limited to his potential claims under Title VII and § 1981 and, perhaps less likely, under § 1985), he may seek to do so by moving for leave to reinstate and to file an amended complaint within two weeks.

---

1   Such a document, which goes beyond the complaint, is not properly considered on a motion to dismiss. Since such a document would have no effect on this case, it is unnecessary to convert this motion to one for summary judgment.

2   Discrimination may be so unjustifiable in some cases as to be violative of the due process clause of the fifth amendment, which does limit the federal government. Bolling, supra, 347 U.S. at 499. However, any amendment of the complaint to invoke the fifth amendment would be futile, since Conrail is "basically a private enterprise," despite considerable federal involvement, and its actions do not constitute the necessary "federal action" required by the fifth amendment. Myron v. Consolidated Rail Corp., 752 F.2d 50, 54 (2d Cir.1985); see also Wenzer v. Consolidated Rail Corp., 464 F.Supp. 643, 647–49 (E.D.Pa.), aff'd mem., 612 F.2d 576 (3d Cir.1979); Anderson v. National R.R. Passenger Corp. (Amtrak), 754 F.2d 202, 204–05 (7th Cir.1985) (Amtrak not sufficiently tied to government to warrant finding of governmental action for purposes of fifth amendment).

**All Citations**

Not Reported in F.Supp., 1987 WL 5406

---

**End of Document**                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 2671931
Only the Westlaw citation is currently available.
United States District Court,
District of Columbia.

Asa GORDON, Plaintiff,
v.
NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, David S. Ferriero, and Oliver Potts, Defendants.

Civil Case No. 16–2458 (RJL)
|
Filed 06/20/2017
|
Signed 06/19/2017

**Attorneys and Law Firms**

Asa Gordon, Washington, DC, pro se.

Johnny Hillary Walker, III, U.S. Attorney's Office, Washington, DC, for Defendants.

### MEMORANDUM OPINION

RICHARD J. LEON, United States District Judge

*1 Pro se plaintiff, Asa Gordon ("Gordon" or "plaintiff"), filed this action against the National Archives and Records Administration ("NARA" or "the Agency") and two of its officials (collectively, "defendants") seeking declaratory and injunctive relief from the way in which the Agency runs the Electoral College system. Specifically, he contends that there are eleven states whose state laws do not require a winner-take-all allocation of electoral votes, and therefore the Fourteenth Amendment requires these states to allocate their electoral votes proportionally, according to the popular vote. This matter is now before the Court on Defendants' Motion to Dismiss [Dkt. # 7]. Upon consideration of the parties' submissions and the entire record herein, defendants' motion is GRANTED and plaintiff's case will be DISMISSED with prejudice.[1]

[1] On February 10, 2017, plaintiff moved for leave to file an amended complaint [Dkt. # 12] in an attempt to bolster the facts supporting his claim of Article III standing. There are no new factual allegations in his proposed amended complaint, however, that would alter this Court's ruling on Article III standing. His motion is therefore DENIED as moot. Plaintiff also filed a motion to present oral argument for summary judgment [Dkt. # 2]. Because this Memorandum Opinion dismisses plaintiff's claim with prejudice, that motion is also DENIED as moot.

### BACKGROUND

Plaintiff identifies himself as Executive Director of the Douglass Institute of Government, an advocacy think tank. See Complaint at ¶ 7. He is a U.S. citizen, resident of the District of Columbia, and voter in the 2016 presidential election. Id.; Proposed Amended Complaint at ¶ 14. Gordon alleges that the allocation of presidential electors has been unconstitutional in some states since the ratification of the Fourteenth Amendment. See Complaint at ¶ 10. Specifically, he claims that there are eleven unbounded states,[2] and pursuant to 2 U.S.C. § 6, electors in those states must be apportioned to the presidential candidates based on the percentage of the popular vote they received. Id. Otherwise, Gordon alleges, these states violate Section 2 of the Fourteenth Amendment, which penalizes states for abridging the right of citizens to vote by reducing the number of their Representatives in Congress. Id. at ¶ 18, U.S. CONST. amend. XIV, § 2.

[2] Plaintiff identifies these eleven states as: Alabama, Arizona, Georgia, Indiana, Iowa, Michigan, North Carolina, Pennsylvania, South Carolina, Tennessee, and Wisconsin. See Complaint at ¶ 11.

To remedy this alleged violation, plaintiff seeks an order requiring that NARA: (1) inform state governors that the electors must abide by the Fourteenth Amendment during their December 19 meetings and notify them that reference to Section 2 of the Fourteenth Amendment should have been included in the information packet sent to them; and (2) examine the Certificates of Vote to ensure that they comply with plaintiff's reading of Section 2 of the Fourteenth Amendment and reject those that do not. See Complaint at 9.

*2 On January 3, 2017, Gordon filed a motion for a temporary restraining order and preliminary injunction, seeking to compel defendants to reject Certificates of Vote that allocate electoral votes on a winner-take-all basis where state law does not so require. Pl.'s Mot. for

Temp. Restraining Order and Preliminary Injunction at ¶ 5. I heard argument on the motion on January 9, 2017 and denied the motion for a temporary restraining order as moot. *See* January 9, 2017 Minute Entry. Plaintiff's motion for a preliminary injunction is all that remains.

## STANDARD OF REVIEW

Article III of the U.S. Constitution restricts federal court jurisdiction to cover only "cases" and "controversies." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The burden is on the party invoking federal jurisdiction to show that he has standing to sue. *Id.* at 561, 112 S.Ct. 2130. To satisfy Article III's jurisdictional requirement, a plaintiff must establish three elements: (1) that he suffered an injury-in-fact that is concrete and particularized," and "actual or imminent, not conjectural or hypothetical"; (2) that there is a causal connection between the injury and the conduct complained of that is fairly traceable" to the action challenged; and (3) that it is likely—as opposed to "merely speculative"—that the injury will be redressed by a favorable decision. *Id.* at 560–61, 112 S.Ct. 2130 (internal quotation marks and alterations omitted). Because standing is essential to a federal court's subject matter jurisdiction, the Court must first determine whether plaintiff has satisfied Article III's standing requirement before examining the merits of his complaint. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 98, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

## ANALYSIS

The problem for Gordon—among others—is that he has not established an injury sufficient to satisfy Article III's injury-in-fact requirement. Plaintiff's constitutional theory is not a new one; he has filed at least seven lawsuits substantially similar to this one, and each has been dismissed, with three dismissed for lack of standing.[3] But no new facts alleged in the present complaint alter the fatal shortcomings of his case. Gordon resides—and votes—only in Washington, D.C., which is not one of the unbounded states whose electoral systems he challenges. *See* Complaint at ¶¶ 7, 11. He therefore has suffered no direct infringement on his own right to vote. Indeed, as our Circuit noted in one of plaintiff's more recent Electoral College challenges, Gordon is not injured by the operation of the [eleven] states' winner-take-all systems because he does not vote in those states." *Gordon v. Biden*, 364 Fed.Appx. 651, 652 (D.C. Cir. 2010) (affirming the district court's dismissal of Gordon's complaint seeking to enjoin Vice President Joseph Biden from presiding over tabulation of five unbounded electoral states that, by practice, traditionally award presidential electors on a winner-take-all basis); *see also Gordon v. Haas*, 828 F.Supp.2d 13, 19 (D.D.C. 2011) (dismissing Gordon's complaint against the clerk of the United States House of Representatives for lack of Article III standing). As such, plaintiff has not suffered a concrete and particularized injury sufficient to establish Article III standing.

[3] Gordon's previous related lawsuits include: (1) a suit against former Vice President Richard Cheney, *Gordon v. Cheney*, No. 1:05–cv–00006 (HHK) (D.D.C. 2005) (voluntarily dismissed on grounds of mootness); (2) a suit against the mayor of the District of Columbia, *Gordon v. Williams*, No. 1:04–cv–01904 (HHK) (D.D.C. 2005) (dismissed for plaintiff's failure to respond to show cause order); (3) another suit against the National Archives and Records Administration, *Gordon v. Nat'l Archives and Records Administration*, No. 1:02–cv–01551 (TPJ) (D.D.C. 2003) (dismissed with prejudice for lack of standing); (4) a suit against former Vice President Albert Gore, *Gordon v. Gore*, No. 1:00–cv–03112 (RCL) (D.D.C. 2001) (voluntarily dismissed); (5) a suit against former Senate majority leader Trent Lott, *Gordon v. Lott*, 1:00–cv–03087 (RCL) (D.D.C. 2000) (voluntarily dismissed); (6) a suit against former Vice President Joseph Biden, *Gordon v. Biden*, 606 F.Supp.2d 11, 13 (D.D.C. 2009) (dismissed for lack of standing), *aff'd* 364 Fed.Appx. 651 (D.C. Cir. 2010); and (7) a suit against the clerk of the United States House of Representatives, *Gordon v. Haas*, 828 F.Supp.2d 13, 19 (D.D.C. 2011) (dismissed for lack of standing).

**\*3** Even if plaintiff could show that he suffered a particularized injury-in-fact, however, his theory of causation is fatally flawed because his alleged injury is caused entirely by independent actions of third parties. The Supreme Court has made clear that "the 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Here, third

party states and state officials decide how to allocate electoral votes, defendants have *no* role in these decisions. NARA provides information to state governors and election officials regarding the law governing the Electoral College, accepts Certificates of Vote, and reviews those Certificates for any technical deficiencies. *See* Defs.' Mot. to Dismiss, at 6. Crucially, the Agency in no way decides how the electoral votes from the eleven unbounded states are allocated, and it has no power to change the way states allocate their electoral votes. Plaintiff therefore has failed to plead facts sufficient to satisfy Article III's causation requirement. And this result should come as no surprise to plaintiff, as his 2008 complaint against the Vice President was dismissed for largely the same reasons. *Gordon v. Biden*, 606 F.Supp.2d 11, 14 (D.D.C. 2009), *aff'd* 364 Fed.Appx. 651 (D.C. Cir. 2010) ("Because Gordon's alleged injury is not 'fairly traceable' to the Vice President's actions, which in fact are purely ministerial, but rather is attributable to the actions of third-party states and state officials, he fails to satisfy the causation element of standing.").

Therefore, because Gordon has failed to establish an Article III injury, and because his alleged injury is not fairly traceable to defendants' actions, his claim fails for lack of standing. Accordingly, I need not—and will not reach the merits of Gordon's claims. *See Steel Co.*, 523 U.S. at 98, 118 S.Ct. 1003 ("[There are] two centuries of jurisprudence affirming the necessity of determining jurisdiction before proceeding to the merits."). For all of the foregoing reasons, plaintiff's complaint is DISMISSED with prejudice and his motion for a preliminary injunction is DENIED. A separate order consistent with this decision accompanies this Memorandum Opinion.

**All Citations**

--- F.Supp.3d ----, 2017 WL 2671931

---

**End of Document**  © 2017 Thomson Reuters. No claim to original U.S. Government Works.

24 Fed.Appx. 21
This case was not selected for
publication in West's Federal Reporter.
United States Court of Appeals,
Second Circuit.

Christopher Earl STRUNK, Plaintiff–Appellant,
v.
UNITED STATES HOUSE OF REPRESENTATIVES,
Dennis Hastert, Richard Gephardt, Bernard
Saunders, Adolphus Towns, United States
Department of Commerce, Bureau of the Census,
William M. Daley, President of the United States,
United States Census Monitoring Board, Mark
Johnson, Fred Asbell, The State of New York,
Attorney General, Governor, Secretary, Senator Pro
Tempore, Assembly Speaker, New York Republican
State Committee, New York State Democratic
Committee Dick Armey, Defendant–Appellees.

No. 01–6021.
|
Nov. 8, 2001.

Voter brought action for injunctive relief to prevent seating of New York's electors for the presidential election. The United States District Court for the Eastern District of New York, Jack B. Weinstein, J., denied voter injunctive relief. Voter appealed. The Court of Appeals held that voter's challenge to selection process by which electors were chosen was moot.

Affirmed.

West Headnotes (3)

[1]  **Injunction**
   Mootness and ripeness;ineffectual remedy

   **Injunction**
   Elections, Voting, and Political Rights

   Voter's request for injunctive relief that challenged New York's method of selecting presidential electors was moot, where the presidential electors were already seated and the President and Vice-President of the United States had already been elected. U.S.C.A. Const. Art. 2, § 1, cl. 1.

   Cases that cite this headnote

[2]  **Injunction**
   Mootness and ripeness;ineffectual remedy

   **Injunction**
   Nominations and primary elections

   Voter's request for injunctive relief that challenged New York's method of selecting presidential electors was not a controversy capable of repetition, yet evading review, and thus exception to mootness doctrine did not apply, although the same controversy could arise in connection with next presidential election, where voter could file a timely petition for relief at that time. U.S.C.A. Const. Art. 2, § 1, cl. 1.

   Cases that cite this headnote

[3]  **United States**
   Presidential electors

   The individual citizen has no federal constitutional right to vote for electors for the president of the United States unless and until the state legislature chooses a statewide election as the means to implement its power to appoint members of the Electoral College. U.S.C.A. Const. Art. 2, § 1, cl. 1.

   Cases that cite this headnote

*22 Appeal from the United States District Court for the Eastern District of New York, Jack B. Weinstein, Judge.

**Attorneys and Law Firms**

Christopher Earl Strunk, Brooklyn, NY, pro se.

David L. Goldberg, Assistant United States Attorney; Varuni Nelson, of counsel, for Loretta A. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, NY, for appellees.

Present VAN GRAAFEILAND, WINTER, and SACK, Circuit Judges.

## SUMMARY ORDER

**\*\*1** UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of December 26, 2000 be, and it hereby is, AFFIRMED.

The plaintiff Christopher Earl Strunk filed an order to show cause why a preliminary injunction and temporary restraining order should not be granted pursuant to Fed.R.Civ.P. 65(a) and (b), preventing the defendants from seating the State's electors for the 2000 presidential election at the December 18, 2000 meeting of the electoral college. Strunk contends that New York's method of selecting presidential electors, whereby all of the State's electoral college positions are given to individuals representing the candidate who wins the State's popular vote, violates *inter alia* the Equal Protection Clause of the Fourteenth Amendment; the Privileges and Immunities Clause of U.S. Const. Art. IV, §.2; the right to a republican form of government under U.S. Const. Art. IV, § 2, cl. 5; the First Amendment; New York's Constitution; and New York statutory and common law. The defendants made oral motions, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss all of the plaintiff's claims, and the district court granted the motions. The district court held that states have authority to determine the method of selecting presidential electors and that Strunk offered no evidence of fraud as a predicate for judicial intervention. Strunk's subsequent motion for reconsideration was denied.

**[1] [2]** The district court was correct to reject all of Strunk's claims. Strunk's request **\*23** for injunctive relief is moot because the presidential electors were already seated at the December 18, 2000 meeting of the electoral college and the President and Vice President of the United States have been elected. *See United States v. Mercurris,* 192 F.3d 290, 293 (2d Cir.1999). Thus, it is "impossible for the court to grant any effectual relief whatever to the prevailing party." *In re Kurtzman,* 194 F.3d 54, 58 (2d Cir.1999); *see also Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998); *Fox v. Bd. of Trs. of the State Univ. of N.Y.,* 42 F.3d 135, 140 (2d Cir.1994), *cert. denied,* 515 U.S. 1169, 115 S.Ct. 2634, 132 L.Ed.2d 873 (1995). Nor does the instant case fall within the limited exception wherein a controversy may be "capable of repetition, yet evading review." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). Although the same controversy may arise in connection to the 2004 elections, Strunk can file a timely petition for relief at that time.

**[3]** The district court in this instance reached the merits of the plaintiff's claims, and rejected all of them. We note that the district court correctly stated the proposition of law that states are constitutionally empowered to determine how to select electors: "Each State shall appoint, in such Manner *as the Legislature thereof may direct,* a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress." U.S. Const. Art. II, § 1, cl. 2 (emphasis added). Thus, "[t]he individual citizen has no federal constitutional right to vote for electors for the president of the United States unless and until the state legislature chooses a statewide election as the means to implement its power to appoint members of the Electoral College." *Bush v. Gore,* 531 U.S. 98, 104, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000) (citing U.S. Const. Art. II § 1); *see also McPherson v. Blacker,* 146 U.S. 1, 35, 13 S.Ct. 3, 36 L.Ed. 869 (1892).

**\*\*2** For the foregoing reasons, the judgment of the District Court is hereby AFFIRMED.

**All Citations**

24 Fed.Appx. 21, 2001 WL 1412533

---